HIRAM BERKEY *vs.* MARY ANN JUDD and others.

December 24, 1885.

**Estoppel—Surety on Executors' Bond—Undisclosed Condition as to Delivery.**—An executors' bond, having been executed by the executors, was signed and sealed by S. as surety, and by him left with the judge of probate, the statutory obligee, by whom it was afterwards duly approved, and letters testamentary issued accordingly. S. is estopped to set up against the bond an agreement between him and the executors that the bond should not take effect until executed by other co-sureties; the obligee not having had notice of the agreement, actual or constructive.

Plaintiff brought this action in the district court for Washington county, on the probate bond of the executors of George B. Judd, deceased, the breach assigned being the refusal of the executors to pay to the plaintiff the amount of a judgment in his favor, which the probate court had ordered them to pay out of assets in their hands.

After the decision of the appeal to this court from an order overruling defendants' demurrer, (31 Minn. 271,) the defendant Sabin (the surety on the bond) answered the complaint, and the action was tried by *Crosby, J.*, (a jury being waived,) who ordered judgment for plaintiff. A new trial was refused, and defendant Sabin appealed.

*Searles, Ewing & Gail*, for appellant.

*H. J. Horn*, for respondent.

BERRY, J. The executors' bond, having been executed by the executors, was signed and sealed by Sabin as surety, and by him left with the judge of probate, the statutory obligee, by whom it was afterwards duly approved, and letters testamentary issued accordingly. Upon this simple state of facts, the bond would be taken to have been completely *executed* by Sabin, and so as to bind him according to its

tenor. It would have been *signed, sealed,* and *delivered* by him. But it appears that Sabin signed the bond upon an understanding between him and the executor at whose request he signed it, and with the expectation, that Seymour and Jackman would execute it as co-sureties; which they did not do. Sabin claims that this understanding amounted to an agreement that it should not take effect until they had signed it.

In our opinion the trial court was right in finding that it did not amount to an *express* agreement. But whether it amounted to an *agreement* of any kind or not, there is no evidence that any such agreement, express or implied, was communicated to the judge of probate, or that he was affected with notice of it, directly or indirectly. In the view most favorable to the appellant, Sabin, the case is, then, one of a bond perfect upon its face, signed, sealed, and in fact delivered by principals and surety to the obligee named therein, who has acted upon the faith of it, to his prejudice if it be not held valid, and without notice, actual or constructive, of an alleged agreement between principal and surety by which the bond was not to take effect until executed by other sureties. That in such circumstances the surety ought to be and is estopped to set up the alleged agreement in defence against the bond is not only clear upon principle, but is settled by an irresistible weight and concurrence of authority. *Dair* v. *U. S.,* 16 Wall. 1; *State* v. *Peck,* 53 Me. 284; *Deardorff* v. *Foresman,* 24 Ind. 481; *Comstock* v. *Gage,* 91 Ill. 328; *Smith* v. *Peoria Co.,* 59 Ill. 412; *McCormick* v. *Bay City,* 23 Mich. 457; *Ward* v. *Hackett,* 30 Minn. 150; *Pence* v. *Arbuckle,* 22 Minn. 417; Brandt on Suretyship, § 355, and note.

Whether the defence mentioned would be available to the surety, even if it appeared that, at the time of taking and approving the bond, the judge of probate (who is made obligee, not for himself, but for those interested in the estate) had notice of the alleged agreement, we are not now called upon to consider.

Order affirmed.